967 A.2d 359 (2009)
406 N.J. Super. 228
STATE of New Jersey, Plaintiff-Respondent,
v.
Jason V. BROOM-SMITH, Defendant-Appellant.
DOCKET NO. A-3526-07T4.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 2009.
Decided April 3, 2009.
*360 Steven E. Nelson argued the cause for appellant (Nelson, Fromer & Crocco, attorneys; Mr. Nelson, of counsel; Matthew Jordan, on the brief).
William K. Meighan, Assistant Prosecutor, argued the cause for respondent (Marlene Lynch Ford, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Senior Assistant Prosecutor, of Counsel; Mr. Meighan, on the brief).
Before Judges LISA, REISNER and ALVAREZ.[1]
The opinion of the court was delivered by
REISNER, J.A.D.
After the denial of his motions for discovery and suppression of evidence, defendant Jason Broom-Smith pled guilty to first-degree possession with intent to distribute in excess of five ounces of cocaine, N.J.S.A. 2C:35-5a(1). Consistent with the terms of the plea agreement, he was sentenced to twenty-five years in prison with sixty-five months of parole ineligibility. As permitted by the plea agreement, on this appeal, he is challenging the January 11, 2008 judgment of conviction; the October 5, 2007 order denying his suppression motion; and the January 11, 2007 order denying his motion to compel additional discovery concerning the search warrant that led to the discovery of the cocaine. We affirm, concluding that the warrant was not defective and defendant was not entitled to additional discovery aimed at challenging its validity.

I
These are the most pertinent facts. Based on information from a confidential informant, law enforcement officers arranged *361 for the informant to make a "controlled buy" of drugs from defendant. The purchase was structured in such a way that the officers could be certain that the informant did not possess any drugs prior to the purchase from defendant, and they kept the informant under constant visual surveillance before, during and after the purchase. The investigators observed the informant going into defendant's house and saw defendant come out of his house, retrieve a small package from his vehicle, and re-enter the house. Once the purchase was complete, the informant gave the drugs to the investigators, who field-tested them and found them to be cocaine. On a second occasion, the informant advised investigators that defendant had told the informant to come to defendant's house to buy cocaine.
Based on that information, Melissa Matthews, an Ocean County prosecutor's investigator, applied for and obtained warrants to search defendant's car and his house. The search of the vehicle was negative, but a large quantity of cocaine was found in defendant's house.
Defendant challenged the warrant application based on the following circumstances. The warrant was signed by Judge Sheehy, who was the Berkeley Township municipal judge, although defendant's house was located in Dover Township. Both towns are in Ocean County. The Ocean Vicinage Assignment Judge had entered an order in 2003, designating every municipal judge as an acting judge for every municipality in the county. In the trial court, as on this appeal, defendant contended that the order was overbroad and illegal. He asserted that N.J.S.A. 2B:12-6 and Rule 1:12-3(a) were intended to allow an assignment judge to designate an acting municipal judge from another municipal court to act as a substitute in situations where the regularly-assigned judge was disqualified. He contended that those provisions were not intended to allow, for all purposes, every municipal judge in the county to act in place of any and every other municipal judge for any reason. He contended that this would, among other things, encourage judge-shopping on warrant applications.
Premised on this theory, defendant sought discovery aimed at determining whether the two regularly-assigned Dover Township judges were unavailable, or for what other reasons the prosecutor's investigator had applied to the Berkeley Township judge for the warrant. Defendant also sought additional discovery concerning the background circumstances relating to the warrant application. We briefly review the history of these requests.
On September 6, 2006, defense counsel sent the prosecutor's office a three-page letter seeking a wide variety of discovery concerning the investigation leading up to the warrant application, including any additional reports prepared by Investigator Matthews, her notes of communications with the confidential informant, a report of Investigator Steinhauer which was referenced in Matthews' report, and information concerning the chain of custody of the drugs during the period after the drugs were field-tested. He also sought information concerning the jurisdiction of the judge who issued the warrant.
By letter dated October 10, 2006, an assistant prosecutor sent defense counsel additional discovery including Investigator Steinhauer's report plus reports of a detective and a police officer, and the "CAD [dispatch] report for this matter." The assistant prosecutor did not include any information about the municipal judge.
By letter dated October 27, 2006, defense counsel asked the prosecutor for additional discovery addressed exclusively to the issue of whether the municipal judge *362 who issued the warrant had jurisdiction to do so. Counsel did not request any additional discovery concerning the investigation prior to the warrant application. By letter dated November 8, 2006, the prosecutor's office declined to produce the discovery requested in the October 27 letter, contending that it was irrelevant.
On November 29, 2006, defense counsel filed a motion to compel discovery. The motion was primarily directed at obtaining discovery concerning the jurisdiction of the municipal judge who issued the warrant. However, counsel also demanded "[a]ny and all investigation reports, supplemental investigation reports and/or contemporaneous notes of any law enforcement personnel involved in the investigation of defendant... before the execution of the search warrants and arrest of defendant on January 24, 2006." He also sought chain of custody documentation and laboratory reports concerning the cocaine allegedly sold by defendant to the informant.
In an accompanying certification of counsel, which included both factual recitations and legal argument, counsel focused on his need for the requested discovery as it related to his ability to challenge the jurisdiction of the judge who issued the warrant. Counsel submitted a supplemental certification on December 13, 2006, addressing only the issue of the municipal judge's jurisdiction and his application for discovery on that issue.
The discovery motion was heard on December 20, 2006. At the argument, defense counsel indicated his awareness that the Berkeley Township municipal court was in session on the day and time when Matthews applied for the warrant, and the Dover Township municipal court was not, but he asserted that this did not authorize the Berkeley Township judge to sign the warrant for defendant's property in Dover Township. He contended that the statute and court rules only allowed such a substitution in case the Dover Township municipal judges had conflicts of interest or were actually unavailable. The prosecutor contended that N.J.S.A. 2B:12-6 was broader in scope and permitted a substitution for any good cause.
With respect to the request for discovery concerning the municipal court judges, the trial court ruled that defendant's argument could be decided as a matter of law without the need for discovery. The judge concluded that the assignment judge's order was not as narrow as the defense urged, and that the warrant application was properly submitted to "an independent magistrate with authority to act." He concluded:
[T]here is no requirement in the law for this officer to establish here the protocol or the pecking order of what judge was available.
I think in the practicality of everyday life at any given moment one judge may be available as opposed to another judge.
The trial judge concluded that defendant's additional discovery application was improperly aimed at discovering the identity of the confidential informant. See State v. Spivey, 179 N.J. 229, 241, 844 A.2d 512 (2004). The judge also ruled that the discovery sought was irrelevant because defendant was not charged with selling drugs to the informant, and defendant had not shown any good faith basis for what would otherwise simply be a "fishing expedition":
[W]hen one comes forward and says I want to attack the substance of the allegations or the statements of fact contained in the affidavit, one has the responsibility to show that there is some wrongdoing or some falsehood by independent evidence. Not a fishing expedition.

*363 There has to be some showing, as a matter of fact. Some allegation.
....
... [I]t is not important and it is not relevant and it is not material whether or not the drugs that were purchased by the C.I.alleged to have been purchased by the C.I. on whatever date were tested and proved positive for drugs or not. The point is they were represented to be drugs.
There was [a] ... confidential informant controlled purchase of alleged CDS. That is sufficient by itself as an allegation to support the finding of probable cause to believe that there is the sale of CDS. A confidential informant and the lab report submission.... [T]he information that counsel seeks here would merely go to provide the defense and the defendant an opportunity to zero in on the precise time and place of the ... controlled purchase of the C.I. [as] alleged in the affidavit, and therefore would give up the identity of the confidential informant. And there is no showing here that that disclosure should be made.
....
... In order to attack the affidavit, you don't do it by way of a fishing expedition and say give me the name of the confidential informant and therefore then I'll go and make my defense.
....
What I'm finding as a matter of fact is what you have asked for is likely to lead to the disclosure and the ability of the defendant to discern the identity of the confidential informant. And you are asking for that without any corroboration, without any independent proof, without any attack on the foundations of the allegations contained within the warrant.
Hence, the judge entered an order on January 11, 2007, denying the discovery motion in its entirety.
On October 5, 2007, the parties argued defendant's suppression motion, including his request for a Franks[2] hearing to challenge the validity of the search warrant. Defense counsel argued that since the Berkeley Township judge lacked jurisdiction to issue the search warrant, it was invalid. He also contended that the assignment judge's order was inconsistent with N.J.S.A. 2B:12-6 in appearing to authorize any municipal court judge to substitute for any other municipal judge, without standards or prerequisites for the substitution. He reasserted his argument that the court should permit discovery into the investigator's reasons for presenting the warrant to the Berkeley Township municipal judge instead of to a Dover Township judge. He also repeated his demand for discovery into the background of the warrant application.
In denying the motion, the judge reasoned that defendant had not alleged an adequate basis for a Franks hearing:
A [Franks] hearing is based on an allegation, and not a mere allegation, but an allegation supported by some evidence in a pleading that attacks the substance of the facts on which the magistrate relied on finding probable cause for the issuance of the warrant; for instance, information or reason to believe in good-faith that the facts ... which the officer recited in his affidavit were false, were known to be false by the officer, or that the confidential informant relied upon by the affiant was not, in fact, a confidential informant, or there was some basis for the revealing of how *364 and where that information came together. That's the reason for a [Franks] hearing.
None of those substantive allegations have been made here. And the reason for that is so that we do not exalt form over substance in our law. We must look at the substance of these applications to determine whether the constitutional privileges of Mr. Broom-Smith have been violated.
... Municipal Court Judge [Sheehy] was duly sworn in and appointed. There was no basis to think that he was any less independent, an independent magistrate in this review, than any other magistrate or judge of any municipal court. And the territorial limitations of his jurisdiction were taken away by [the assignment judge's order] in 2003.
The application for the [Franks] hearing is denied. And there being a [lack] of any material basis to attack the search warrant in substance, the motion to suppress the evidence is therefore denied.

II
On this appeal, defendant raises the following issues:
POINT I: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY AS THE ADDITIONAL DISCOVERY SOUGHT BY DEFENDANT IS RELEVANT AND THE MATERIALS DISPOSITIVE OF THE ISSUES OF THE CASE.
POINT II: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED WITH A DEFECTIVE WARRANT AS THE MUNICIPAL COURT JUDGE LACKED AUTHORITY/JURISDICTION TO ISSUE SAME.
The statute concerning assignment of acting municipal judges provides:
Subject to the Rules of Court, the Assignment Judge of the vicinage may appoint an acting judge of each of the municipal courts in the vicinage to serve as judge temporarily when the judge of that court is unable to hold the municipal court or for other cause. A person appointed as an acting judge shall be a judge of another municipal court or an attorney-at-law. A copy of the appointment of an acting judge for a municipal court shall be sent to the judge of that court and to the Administrative Director of the Courts.
[N.J.S.A. 2B:12-6 (emphasis added).]
The statute was adopted in 1993. L. 1993, c. 293. The phrase "or for other cause" was added to the law in 1996, thus broadening its scope. L. 1996, c. 95.
The Rules of Court provide that "[a] search warrant may be issued by a judge of a court having jurisdiction in the municipality where the property sought is located." R. 3:5-1. However, the Rules also extend jurisdiction to acting judges who are regularly assigned to sit in other municipalities:
In the event of the disqualification or inability for any reason of a judge to hear any pending matter before or after trial, another judge of the court in which the matter is pending or a judge temporarily assigned to hear the matter shall be designated by the Chief Justice or by the Assignment Judge of the county where the matter is pending except that in the municipal court the Assignment Judge shall designate the acting judge....
[R. 1:12-3(a)(emphasis added).]
Rule 1:12-3(a), however, pre-dated the adoption of N.J.S.A. 2B:12-6. See State v. Jones, 185 N.J.Super. 285, 287-88, 448 *365 A.2d 495 (App.Div.1982). The Rules also permit a municipal judge who cannot preside over a trial for any reason to transfer the trial to another municipal judge designated by the assignment judge. R. 7:8-2(b).
The Ocean County Assignment Judge entered an order on September 10, 2003, "[i]n accordance with Rules 1:12-3(a) and [N.J.S.A.] 2B:12-6, authorizing the Assignment Judge to designate a Municipal Court Judge as an Acting Municipal Court Judge in another Municipal Court." With certain exceptions not pertinent here, the order provided that "all duly appointed Municipal Court Judges are designated as Acting Municipal Court Judges for every Municipal Court within the County." The order further permitted a municipal court judge to "transfer the matter for trial to any municipality within the vicinage," pursuant to R. 7:8-2(b).[3]
Defendant relies on State v. Bell, 166 N.J.Super. 143, 399 A.2d 310 (App.Div. 1979), a very brief decision which held:
A warrant issued by the judge of the Municipal Court of Aberdeen Township for the search of premises situated in the Borough of Union Beach, the issuing judge not then being designated or authorized to officiate as acting judge of the Municipal Court of Union Beach, is outside the territorial jurisdiction and exceeds the authority of the issuing judge and, as such, is illegal and void.
[Id. at 144, 399 A.2d 310 (emphasis added).]
Bell predated the 1993 adoption of N.J.S.A. 2B:12-6, and in any event is not on point, because in this case the Assignment Judge's order did designate the Berkeley Township municipal judge to serve as acting municipal judge for Dover Township.
In this case, we need not address the outside parameters of either N.J.S.A. 2B:12-6 or Rule 1:12-3(a), for two reasons. First, we conclude that, as applied here, both provisions are broad enough to authorize a warrant application to the Berkeley Township municipal judge, who was available because that municipality's court was in session, on a day when the Dover Township municipal court was not in session and its judge would therefore not be readily available. Most warrant applications have an element of urgency, and most municipal judges sit part-time and have private law practices. When the local municipal judge's court is not in session, it makes practical sense to allow law enforcement officers to apply to another municipal judge in the county, whose court is then in session, rather than requiring them to track down an out-of-session municipal judge who may be appearing in court on behalf of a client or be otherwise engaged in the activities of private law practice.
Second, we conclude that even if there had been an error on the part of the investigator or the municipal judge due to an overly broad reading of the Assignment Judge's order, the error would be technical and would not vitiate the validity of the warrant. See R. 3:5-7(g); State v. Novembrino, 105 N.J. 95, 130 n. 15, 519 A.2d 820 (1987)(reaffirming Rule 3:5-7(g)).[4] In *366 that connection, we note that our courts have been reluctant to invalidate search warrants based on confusion over jurisdiction or other issues that do not implicate probable cause or the neutrality of the issuing judge. See State v. Bisaccia, 58 N.J. 586, 592, 279 A.2d 675 (1971); State v. Pillo, 15 N.J. 99, 102-05, 104 A.2d 50, cert. denied, 348 U.S. 855, 75 S.Ct. 78, 99 L.Ed. 673 (1954); State v. Gioe, 401 N.J.Super. 331, 340, 950 A.2d 930 (App. Div.2008); State v. McCann, 391 N.J.Super. 542, 554-55, 919 A.2d 136 (App.Div. 2007); State v. Jones, supra, 185 N.J.Super. at 288-89, 448 A.2d 495. See also State v. Gadsden, 303 N.J.Super. 491, 503-05, 697 A.2d 187 (App.Div.), certif. denied, 152 N.J. 187, 704 A.2d 17 (1997)(execution of arrest warrant outside arresting officers' jurisdiction). We agree with the trial judge that discovery on this issue was not required and we therefore affirm the order denying the discovery application with respect to the investigator's decision to apply to the Berkeley Township municipal judge for the warrant.[5]
Turning to the next issue, concerning discovery for purposes of a Franks hearing, we review the judge's discovery ruling for abuse of discretion. See State v. Gilchrist, 381 N.J.Super. 138, 147, 885 A.2d 29 (App.Div.2005). Significantly, although defendants are entitled to broad discovery under Rule 3:13-3, they are not entitled to turn the discovery process into a fishing expedition.
A defendant should not be allowed to "transform the discovery process into an unfocused, haphazard search for evidence." Another significant limitation on a defendant's right to discovery is "the chilling and inhibiting effect that discovery can have on material witnesses who are subjected to intimidation, harassment, or embarrassment."
[Gilchrist, supra, 381 N.J.Super. at 146, 885 A.2d 29 (quoting State v. DRH, 127 N.J. 249, 256, 604 A.2d 89 (1992)).]
The trial judge concluded that defendant's broad demand for all documents created by law enforcement prior to the warrant application was a veiled attempt to learn the identity of the confidential informant. In his appellate brief, defendant asserts a more narrow interest; he claims he sought information concerning the investigation prior to the warrant application in order "to verify the information Investigator Matthews provided in her search warrant affidavit." He argues specifically that for that purpose he should have been entitled to chain of custody documents concerning the drugs the informant allegedly purchased from defendant and the results from the testing laboratory. Defendant contends he needed that information to be able to possibly attack the validity of the warrant at a Franks hearing.
We disagree. For purposes of the warrant application, it was sufficient that Investigator Matthews had listened in to the phone conversation in which defendant told the informant to come over to his house, that the informant reported to her right after the controlled buy that defendant sold him a substance purported to be cocaine, and that the investigators field-tested the purchased substance immediately after the controlled buy and found it to be cocaine. Whether more extensive later testing conclusively proved the substance to be cocaine, or whether the police maintained an adequate chain of custody in *367 getting the drugs to the laboratory, are irrelevant to the validity of the warrant.
In that connection we also note that a Franks hearing is not directed at picking apart minor technical problems with a warrant application; it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents and requires a substantial preliminary showing:
There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.
[Franks, supra, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.]
See also State v. Howery, 80 N.J. 563, 568, 404 A.2d 632, cert. denied, 444 U.S. 994, 100 S.Ct. 527, 62 L.Ed.2d 424 (1979)(adopting the Franks standard); State v. Martinez, 387 N.J.Super. 129, 139-41, 903 A.2d 457 (App.Div.), certif. denied, 188 N.J. 579, 911 A.2d 71 (2006). Nothing in defendant's appellate brief suggests even a remote possibility that the discovery he sought would have enabled him to meet the Franks standard. We find no abuse of the trial judge's ruling on this discovery issue.
Affirmed.
NOTES
[1] Judge Alvarez did not participate in oral argument, but joins in the opinion with the consent of counsel. See R. 2:13-2(b).
[2] Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
[3] The widespread practice of assignment judges entering orders designating acting municipal judges was noted by the New Jersey Law Revision Commission in its 1991 Report and Recommendations Relating to Municipal Courts, at 5. That report recommended the adoption of N.J.S.A. 2B:12-6. Ibid.
[4] Unlike Novembrino, this aspect of the case does not implicate a lack of probable cause for issuance of the warrant and does not implicate the same policy concerns underlying the Court's rejection of the good faith doctrine. See Novembrino, supra, 105 N.J. at 153-56, 519 A.2d 820. On its face, the warrant demonstrated ample probable cause for the search and, as the trial judge noted, there is no question that Judge Sheehy was an impartial magistrate.
[5] Defendant's arguments on this issue require no further discussion. R. 2:11-3(e)(2).